Submitted November 3; general judgment affirmed, supplemental judgment reversed and remanded with instructions to delete award of "post-judgment" attorney fees, otherwise affirmed December 29, 2022

COAST 2 COAST LOGISTICS, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

BADGER AUCTIONEERS, INC.,
a foreign corporation,
*Defendant-Appellant.*

Jackson County Circuit Court
15CV31266; A176482

524 P3d 555

In this long-running litigation arising from the delivery of grocery-store freezer doors that were damaged in shipment, the doors' owner, defendant Badger Auctioneers, Inc., appeals from general and supplemental judgments for plaintiff Coast 2 Coast Logistics, LLC, the shipping broker. Defendant asserts that the trial court erred in granting plaintiff's motion for summary judgment on plaintiff's claims of breach of contract arising from defendant's failure to pay brokerage fees on seven shipments; erred, after a bench trial, in ruling for plaintiff on two additional breach of contract claims and on defendant's counterclaim of negligence; erred in awarding plaintiff attorney fees of $98,494.50 under ORS 20.082(2); and erred in awarding "post-judgment" attorney fees of $5,000. *Held*: The trial court did not err in granting plaintiff's motion for summary judgment on plaintiff's claims of breach of contract, because defendant failed to demonstrate a genuine issue of material fact concerning the existence of the contracts. The trial court did not err in ruling for plaintiff on two additional breach of contract claims and on defendant's counterclaim of negligence, because the evidence at trial was sufficient to support the trial court's verdict. The trial court did not err in awarding plaintiff attorney fees under ORS 20.082(2). The trial court did err, however, in awarding "post-judgment" attorney fees of $5,000 for anticipated legal services.

General judgment affirmed; supplemental judgment reversed and remanded with instructions to delete award of "post-judgment" attorney fees; otherwise affirmed.

Benjamin M. Bloom, Judge.

Jeremy Vanderloop, Wisconsin, and Lakeside Legal Services, LLC, Dominic Campanella and Brophy Schmor, LLP, filed the briefs for appellant.

Melisa A. Button and Michael J. Mayerle filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

General judgment affirmed; supplemental judgment reversed and remanded with instructions to delete award of "post-judgment" attorney fees; otherwise affirmed.

**TOOKEY, P. J.**

In this long-running litigation arising from the delivery of grocery-store freezer doors that were damaged in shipment, the doors' owner, defendant Badger Auctioneers, Inc., appeals from general and supplemental judgments for plaintiff Coast 2 Coast Logistics, LLC, the shipping broker. Defendant asserts that the trial court erred in granting plaintiff's motion for summary judgment on plaintiff's claims of breach of contract arising from defendant's failure to pay brokerage fees on seven shipments; erred, after a bench trial, in ruling for plaintiff on two additional breach of contract claims and on defendant's counterclaim of negligence; erred in awarding or in failing to apportion plaintiff's requested attorney fees of $98,494.50 under ORS 20.082(2); and erred in awarding "post-judgment" attorney fees for legal services anticipated to be incurred in collecting the judgment.

We agree with the trial court that there are no genuine issues of material fact and that plaintiff was entitled to summary judgment on seven of its breach of contract claims. ORCP 47 C. We further conclude that legally sufficient evidence supports the trial court's rulings for plaintiff on its two remaining breach of contract claims and on defendant's negligence claim. Finally, we conclude that the trial court did not err in its award of attorney fees of $98,494.50 to plaintiff under ORS 20.082(2) but did err in awarding plaintiff "post-judgment" attorney fees of $5,000 for anticipated attorney fees that had not yet been incurred. Accordingly, we affirm the trial court's general judgment and remand the supplemental judgment for deletion of the award for post-judgment attorney fees.

Defendant is a Wisconsin corporation in the business of liquidating grocery store equipment. In February 2015, it hired plaintiff, an Oregon freight brokerage that arranges shipping services through independent third-party carriers. Defendant hired plaintiff to arrange the transport of restaurant equipment from Florida and Illinois to its location in Wisconsin. In the course of their relationship, plaintiff brokered and paid carriers for sixteen transports for defendant. Defendant, in turn, paid plaintiff its fees, but for

only seven of the 16 transports, because defendant believed that plaintiff owed it money for damage to cargo in two of the transports, as described below.

In April 2015, defendant asked plaintiff to arrange shipment of 67 grocery-store freezer doors from Florida to Wisconsin. Plaintiff brokered the shipment through LIV Transportation, a carrier. It is undisputed that, before the shipment of the freezer doors, plaintiff had brokered two prior shipments for defendant with LIV without incident. There is undisputed evidence that, through a software service called SaferWatch, which links to information from the Federal Motor Carrier Safety Administration, plaintiff monitors a carrier's authority, insurance coverage, safety scores, and other operational issues, and that plaintiff did so before qualifying LIV to carry defendant's freight and confirmed that LIV had the legally required insurance coverage and no outstanding issues. There is evidence that the freezer doors were not loaded by plaintiff and that the two transports were "sealed," meaning that the trailer was locked after loading and when it arrived at defendant's location, and that neither plaintiff nor the trucker had accessed the cargo during transport. Defendant asserted, and an insurance investigation determined, that the cargo had been damaged during transport; defendant asserted that it had a prospective buyer for the doors and that it lost $73,700 in sales as a result of the damage. Pending its attempt to be compensated for the damage, defendant declined to pay plaintiff its fees on the damaged shipment and as well as other shipments.

LIV's insurer ultimately settled with defendant for $40,000, and defendant sought the balance from plaintiff, who declined to pay. Defendant continued to decline to pay plaintiff's fees for nine shipments, which totaled $14,750, not disputing plaintiff's performance on those shipments but asserting that the amount due was set off by the amount that plaintiff owed to defendant on account of the damaged cargo.

Plaintiff brought a claim for breach of contract. Plaintiff's complaint alleged nine counts of breach of contract, based on nine invoices that had been sent to defendant

for nine shipments, each invoice for an amount less than $10,000. Plaintiff alleged that it had completed its brokerage obligation on each of the nine shipments and that defendant had failed to pay the invoiced amounts for the brokerage services. Plaintiff's complaint further alleged a right to attorney fees under ORS 20.082(2),[1] a provision authorizing reasonable fees to the prevailing party on contracts if "[t]he amount of the principal together with interest due on the contract at the time the claim is filed is $10,000 or less."

Defendant disputed the trial court's personal jurisdiction and moved to dismiss the complaint on that ground. The trial court denied defendant's motion to dismiss, and defendant responded with an answer denying the substantive allegations of plaintiff's claim and alleging as affirmative defenses that plaintiff had breached or negligently performed its obligations under the contract.

The trial court granted plaintiff's motion for summary judgment on all nine counts of its breach of contract claim, declined to allow defendant to amend its answer to allege counterclaims, and entered judgment for plaintiff. Defendant appealed.

After the trial court had denied defendant's request to file an amended answer, defendant had filed an action against plaintiff and LIV in Wisconsin, seeking damages of $73,700 for the broken freezer doors through claims of negligent bailment; breach of contract; "carrier" liability under the Carmack Amendment to the Interstate Commerce Act, 49 USC section 14706(a)(1); and plaintiff's negligent hiring and supervision of LIV.

The parties subsequently agreed that, in exchange for defendant's voluntary dismissal of the Wisconsin litigation and agreement to waive personal jurisdiction in Oregon, plaintiff would not object to defendant filing an amended answer in the Oregon proceeding. Thus, the parties stipulated to a dismissal of the Wisconsin proceeding,

---

[1] ORS 20.082(2) provides:

"Except as provided in this section, a court shall allow reasonable attorney fees to the prevailing party on any claim based on contract if:

"(a) The amount of the principal together with interest due on the contract at the time the claim is filed is $10,000 or less."

a dismissal of the Oregon appeal, and defendant's waiver of personal jurisdiction in Oregon.

The parties' stipulation provided, "[Defendant] hereby submits to jurisdiction in the State of Oregon for matters raised in the underlying Jackson County Circuit Court Case No. 15CV31266 ('Trial Court Case') and hereby waives that issue at the trial court level." On the parties' stipulation, we dismissed defendant's appeal, the trial court set aside its judgment under ORCP 71, and the matter returned to the trial court docket.

With the trial court's permission, defendant filed an amended answer, alleging affirmative defenses and counterclaims. For its first affirmative defense, breach of contract, defendant alleged:

> "Plaintiff may not enforce the contract as Plaintiff materially breached the contract by failing to perform its obligations and/or negligently performing its obligations causing substantial loss to Defendant."

For its second affirmative defense, set-off/recoupment, defendant alleged:

> "Plaintiff is not entitled to recover because Plaintiff owes substantially more sums to defendant regarding the damage to property and freight caused by Plaintiff's negligence and/or breach of the contract."

Defendant's amended answer also alleged counterclaims. For its first counterclaim, breach of contract, defendant alleged:

> "As part of the contract between Plaintiff and Defendant, Plaintiff and/or Plaintiff's agents authorized and arranged for the transportation of Defendant's property in a negligent and/or reckless manner causing Defendant's property to be damaged in transportation."

Defendant further alleged:

> "Due to Plaintiff's breach of the contract to provide transportation of Defendant's property, approximately 67 doors were damaged, and Defendant had a buyer ready to purchase these doors at a price of $1,100.00 per door for a total damage to Defendant of the lost sale in the amount of $73,700.00."

For its negligence counterclaim, defendant alleged:

"As part of the contract between Plaintiff and Defendant, Plaintiff was required to arrange and provide for the transportation of Defendant's property from Florida to Wisconsin. Plaintiff and or Plaintiff's agents transported Defendant's property which arrived completely damaged. Plaintiff was negligent in one or more of the following ways:

"a)  Negligent hiring, supervision and/or selection of the person(s)/agent(s) loading Defendant's property for transportation;

"b)  Negligent hiring, supervision and/or selection of the person(s)/agent(s) transporting Defendant's property for transportation; and/or

"c)  Failure to maintain proper speed and/or driving procedures when transporting Defendant's property, which included glass components which are fragile."

Defendant sought damages of $73,700 on each counterclaim.

In a motion for summary judgment, plaintiff once again asserted that there was no dispute that plaintiff had fulfilled its obligations under nine separate agreements for transport, and that defendant breached those agreements by failing to pay plaintiff's fees. Plaintiff also offered the declaration of Jewett, an owner and plaintiff's CEO, who stated that separate invoices were sent to and received by defendant for each transport, and further noted that defendant's answer included an admission of that fact. Plaintiff asserted that those invoices represented separate contracts, that there was no genuine issue of material fact as to the existence of the separate contracts, and that plaintiff was entitled to judgment as a matter of law on its breach of contract claims.

In response, defendant admitted that it owed plaintiff $10,050 on what it characterized as a single contractual agreement with plaintiff for the transport of cargo, but it argued that that amount should be set off by $33,200, which was the amount defendant alleged that plaintiff owed for the remaining balance of its loss a result of the damaged cargo.[2]

---

[2] At trial, defendant reduced the requested offset to $23,150.

Defendant further argued that it had only a single contract with plaintiff to broker multiple shipments of cargo for defendant, rather than individual contracts for each transport. Defendant contended that it had never seen separate invoices for each transport, and that plaintiff had invented them "*ex post facto*" so that its claims would fall within the "small contract" provisions of ORS 20.082 for purposes of attorney fees. Defendant asserted that, rather than nine small contracts as alleged by plaintiff, the parties had agreed to the shipment of multiple loads under a single contract.

Defendant presented the declaration of Fleisner, defendant's owner and president, stating that defendant's oral agreement with plaintiff was for multiple shipments that plaintiff billed to defendant on a single invoice. The president declared,

> "I was never aware of sixteen (16) separate contracts with [defendant]. [Defendant] hired [plaintiff] to ship freight, which [plaintiff] did over several loads. There were never multiple contracts for freight shipping services."

Defendant asserted that Fleisner's affidavit gave rise to a genuine issue of material fact that precluded summary judgment.

The record on summary judgment also includes an invoice for $14,750 from plaintiff to defendant for shipping services from March 15, 2015 to June 2, 2015, and a demand letter from plaintiff's counsel for the full balance of $14,750. Citing *Carrillo v. City of Stanfield*, 241 Or App 151, 255 P3d 491 (2011), defendant contended that plaintiff's multiple claims for relief were based on the same contract and should be aggregated in determining whether attorney fees are available under ORS 20.082(2).

Plaintiff responded that defendant had admitted in its answer that it had received nine separate invoices, and that the "outstanding invoice" to which Fleisner had referred in his declaration was simply a past-due statement listing all unpaid invoices.

The trial court agreed with plaintiff that the invoices represented nine separate agreements with defendant that fell within the "small contract" provisions of ORS 20.082(2).

The trial court granted plaintiff's motions for summary judgment on seven of plaintiff's nine breach of contract claims. But the trial court denied plaintiff's motion for summary judgment as to the two breach of contract claims that related to the transport of the damaged cargo, concluding that there were disputed issues of material fact as to whether plaintiff had satisfied its obligations under those two contracts.

The parties tried to the court plaintiff's two remaining breach of contract claims and defendant's counterclaims of breach contract and negligence, and the court ruled in plaintiff's favor on all the claims and counterclaims and awarded plaintiff the full amount of its requested attorney fees.

On appeal, defendant raises a number of assignments of error, and we address them in turn. In its first assignment, defendant contends that Oregon courts lack personal jurisdiction over defendant. We reject the contention. Although, as required by ORCP 21 G(1),[3] defendant initially raised a challenge to personal jurisdiction by motion, defendant subsequently waived that challenge by stipulating to personal jurisdiction in the trial court; it cannot now

_____

[3] ORCP 21 G(1) provides:

"A defense of lack of jurisdiction over the person, that there is another action pending between the same parties for the same cause, insufficiency of summons or process, or insufficiency of service of summons or process, is waived under either of the following circumstances: (a) if the defense is omitted from a motion in the circumstances described in section F. of this rule, or (b) if the defense is neither made by motion under this rule nor included in a responsive pleading."

ORCP 21 F provides, in turn:

"A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule, except a motion to dismiss for lack of jurisdiction over the person or insufficiency of summons or process or insufficiency of service of summons or process, but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subsection G.(3) of this rule on any of the grounds there stated. A party may make one motion to dismiss for lack of jurisdiction over the person or insufficiency of summons or process or insufficiency of service of summons or process without consolidation of defenses required by this section."

assert that the trial court lacked personal jurisdiction.[4] We therefore reject the first assignment of error.

In its second assignment, defendant asserts that, under ORS 15.380(2)(b),[5] which governs choice of law in "contracts for personal services," the law of the state where the services were primarily rendered should control. Defendant contends that, because the contract or contracts between the parties were for the shipment of freight, the services were not rendered in Oregon but were rendered where the shipments took place, in Florida, Wisconsin, or Illinois, neither of which have a "small contract" attorney-fee provision like ORS 20.082(2). Thus, defendant contends, the trial court erred in applying Oregon contract law, including ORS 20.082(2), to the analysis of plaintiff's breach of contract claims.

Plaintiff's complaint alleged a right to recover attorney fees under ORS 20.082(2). From its inception, as defendant has acknowledged, this dispute has been largely about the availability of attorney fees under ORS 20.082(2), the applicability of which depended on whether the parties had a single contract for multiple transports of cargo or multiple small contracts. In addressing that issue below, defendant argued exclusively Oregon law. For example, in its briefing

---

[4] We reject defendant's contention that, because its stipulation to personal jurisdiction was limited to purposes of trial, it did not waive its right to challenge the trial court's personal jurisdiction on appeal. Defendant's stipulation to submit to the trial court's personal jurisdiction at the trial and to "waive[] that issue at the trial court level" brought defendant within the court's personal jurisdiction, and is not subject to challenge on appeal. *See* ORCP 6 ("A court of this state having jurisdiction of the subject matter may, without a summons having been served upon a party, exercise jurisdiction in an action over *** any party who appears in the action and waives the defense of lack of jurisdiction over the person[.]").

[5] ORS 15.380 provides, in relevant part:

"(1) To the extent that an effective choice of law has not been made by the parties pursuant to ORS 15.350 or 15.355, or is not prescribed by ORS 15.320, 15.325, 15.330 or 15.335, contracts described in subsection (2) of this section are governed by the law of the state specified in subsection (2) of this section unless a party demonstrates that the application of that law would be clearly inappropriate under the principles of ORS 15.360.

"(2)(a) ***

"(b) Contracts for personal services are governed by the law of the state where the services are to be primarily rendered pursuant to the contract."

on plaintiff's motion for summary judgment relating to whether the parties had a single contract or multiple contracts, defendant did not raise a choice-of-laws issue and, in fact, argued Oregon law:

> "Under Oregon law, the relevant test for whether separately pled claims fall under the ambit of [ORS] 20.082 is whether the claims 'are based on separate contracts or on the same contract.' *Carrillo v. City of Stanfield*, 241 Or App 151, 160, 255 P3d 491 (2011)."

Defendant did not present the choice-of-law issue for the trial court's consideration until after trial and after the record had closed, in a closing memorandum to which plaintiff did not have an opportunity to respond. In that memorandum, defendant pointed out that the choice-of-law issue had bearing really only on the applicability of ORS 20.082(2). Defendant next raised the issue in a memorandum and at hearing on plaintiff's petition for attorney fees under ORS 20.082(2). Defendant asserts on appeal that it has thereby preserved the issue for our consideration, that ORS 20.082(2) is a substantive law that is subject to choice-of-law analysis, and that, under ORS 15.380(2)(b), the laws of Oregon are not applicable, because the contract, which involved the transport of freight, was performed in other states.

The difficulty with defendant's argument is that, as has been acknowledged by defendant, this case has always been about the availability of attorney fees. We conclude that, having cited and argued exclusively Oregon contract law with reference to the applicability of ORS 20.082(2) for the entirety of the litigation until after trial, defendant waived or, at a minimum, invited any error relating to application of choice-of-law criteria, and its last-minute assertion relating to choice of law does not provide a basis for reversing the trial court.

However, assuming that the choice-of-law issue was properly raised below, we conclude that the trial court did not err. Putting aside the issue of where plaintiff's brokerage services were primarily rendered, we conclude that the choice-of-law statute on which defendant relies does not apply. ORS 15.380(2)(b) states that it applies to contracts for

"personal services." The statute does not define what constitutes a contract for a "personal services," but we readily conclude that the parties' contract for plaintiff's brokerage services was not a contract for personal services. We therefore reject defendant's second assignment of error.

In its third assignment of error, defendant contends that the trial court erred in granting summary judgment to plaintiff on seven of plaintiff's nine counts of breach of contract. Defendant's only contention in its third assignment is that the court erred in determining, as a matter of law, that there were nine separate contracts for purposes of ORS 20.082(2), rather than a single "master" agreement for the shipment of cargo.[6]

In reviewing the trial court's summary judgment ruling, "we will affirm if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." *Towner v. Bernardo/Silverton Health*, 304 Or App 397, 400, 467 P3d 17, *rev den*, 367 Or 115 (2020). There is "[n]o genuine issue as to a material fact" when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

As we said in *Carrillo*, for purposes of determining the applicability of ORS 20.082(2),

> "[w]hether a trial court is required to aggregate claims in determining whether to allow attorney fees * * * depends on the number of particular contracts in any given case. Thus, where multiple claims for relief are based on the same contract, those claims must be aggregated. However, where multiple claims for relief are based on separate contracts, aggregation is unnecessary, indeed, it is inapplicable."

241 Or App at 160. In reviewing the trial court's ruling, the question thus is whether the record on summary judgment gives rise to a genuine issue of material fact as to whether plaintiff's multiple claims are based on a single contract or separate contracts.

---

[6] Defendant does not otherwise challenge plaintiff's entitlement to judgment on those claims.

We agree with the trial court that, in the record on summary judgment, there is no disputed issue of material fact as to whether the parties had a single overarching contract of which the separate deliveries were components. Oregon subscribes to an objective theory of contracts. *Newton/Boldt v. Newton*, 192 Or App 386, 392, 86 P3d 49, *rev den*, 337 Or 84 (2004), *cert den*, 543 US 1173 (2005). That means that, in ascertaining the meaning of a contract, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts. *Cryo-Tech, Inc. v. JKC Bend, LLC*, 313 Or App 413, 428, 495 P3d 699 (2021), *rev den*, 369 Or 211 (2022). The record on summary judgment includes a declaration of Fleisner that he was never aware of separate contracts and that defendant did not agree to individual contracts; but the record on summary judgment does not include evidence of communications or acts that would support the existence of a single "master" agreement that would have encompassed each shipment.[7] While the record would support a finding that the parties had a general oral understanding that they would work together on multiple shipments, there is no evidence in the record that would support a finding that their working together was pursuant to a single master contract.

In contrast, the record on summary judgment includes invoices from plaintiff to defendant for each shipment. Each invoice named defendant as the "customer," and listed a "ship date," a "delivery date," an "invoice date," a "due date," and a "rate." Each invoice stated, "Thank you for your business. Please call us for your next shipment." We agree with the trial court that the record on summary judgment requires the conclusion that each invoice reflected a separate contract. Thus, we reject defendant's contention in its third assignment that the trial court erred in determining on summary judgment that plaintiff's claims were separate contracts within the "small contract" provision of ORS 20.082(2).

---

[7] Defendant pointed to an "outstanding invoice" sent by plaintiff to defendant that combined charges for multiple shipments as evidence of a single "master" contract. But the record on summary judgment requires the finding that that invoice was for delinquent charges that had been previously billed.

In its fourth assignment, defendant challenges the sufficiency of the evidence in support of the trial court's findings for plaintiff on defendant's counterclaim of negligence. In its fifth assignment, defendant challenges the trial court's rejection of its breach-of-contract affirmative defense to plaintiff's two remaining breach of contract claims. We review the trial court's findings on a bench trial under the same "any evidence" standard that we apply in reviewing a jury's verdict. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984); *Hendrix v. McKee*, 281 Or 123, 125, 575 P2d 134 (1978); *see* ORCP 62 F (The findings of the trial court "have the same force and effect" and are "equally conclusive, as the verdict of a jury."); Or Const, Art VII, § 3 (Amended) ("[N]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."). In our review of the record, we view the evidence in the light most favorable to the prevailing party, which is entitled to the benefit of every reasonable inference that may be drawn from the evidence. *Hendrix*, 281 Or at 126. We have reviewed the record and conclude that the trial court's rulings are supported by legally sufficient evidence. Thus, we reject defendant's fourth and fifth assignments.

Defendant's sixth assignment of error relates to the award of attorney fees to plaintiff. In its sixth assignment of error, defendant contends that the trial court erred in failing to apportion the attorney fee award to reduce the request of $98,494.50 by the amount that it asserts is not attributable to plaintiff's prosecution of its breach of contract claims—fees incurred in defense of defendant's counterclaims and in defense of defendant's action in Wisconsin.

When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not authorized, the court generally must apportion the fees incurred for each claim. *Greb v. Murray*, 102 Or App 573, 576, 795 P2d 1087 (1990). An exception arises, however, if the claims involve common legal issues. Fees "'need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not.'" *Id.* (quoting *Sunset Fuel & Engineering Co. v. Compton*, 97

Or App 244, 249, 775 P2d 901, *rev den*, 308 Or 466 (1989). In that situation, the prevailing party is entitled to fees reasonably incurred in association with the claims on which she prevailed, as well as fees incurred on the other claims, "if the party entitled to fees would have incurred roughly the same amount of fees, irrespective of the additional claim or claims." *Perry v. Hernandez*, 265 Or App 146, 149, 333 P3d 1188 (2014). The trial court has wide discretion in making the factual determinations necessary to segregate claims that are covered by an attorney fee provision from those that are not, *Malot v. Hadley*, 102 Or App 336, 341, 794 P2d 833 (1990), and we review the trial court's apportionment decision for an abuse of discretion. *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 383 P3d 409 (2016).

Defendant did not dispute that plaintiff was entitled to fees incurred in defense of defendant's affirmative defenses, but urged that apportionment was appropriate as to fees incurred in defense of defendant's counterclaims and the claims filed in Wisconsin. In rejecting defendant's request for an apportionment, the trial court found that defendant's affirmative defenses and defendant's counterclaims and Wisconsin claims were "closely connected," such that plaintiff could not prevail on its breach of contract claims "until they resolved the issue in the Wisconsin litigation, and in [the] counterclaims on the negligence and breach of contract claims in Oregon." As is apparent from our description of the pleadings, above, the trial court was correct in concluding that defendant's affirmative defenses and counterclaims were "closely connected." Defendant's affirmative defenses and counterclaims, as well as its claims against plaintiff in Wisconsin, were based on the same factual allegations and involved the same or closely analogous legal issues. To prevail on its breach of contract claims, plaintiff needed to defend not only against the affirmative defenses but also against the counterclaims. In view of that, the trial court could find, as it did, that a resolution of plaintiff's claims required it to litigate defendant's counterclaims. We conclude for that reason that the trial court did not abuse its discretion in declining to reduce the attorney fee award by

the fees incurred in defense of defendant's counterclaims for negligence and breach of contract, including the fees incurred for representation in Wisconsin.

If and to the extent that defendant's assignment of error includes a contention that the award of $98,494.50 in attorney fees is excessive, we conclude that, in light of the duration of the litigation and the hours expended, the trial court did not abuse its discretion. *Barber v. Green*, 248 Or App 404, 410, 273 P3d 294 (2012) (stating abuse of discretion standard of review).

Finally, in its seventh assignment of error, defendant contends that the trial court erred in separately awarding "post-judgment" attorney fees of $5,000 for anticipated future collection efforts, contingent on the fees being incurred. "Ordinarily, a court awards attorney fees to a litigant only if a statute or contract authorizes such an award." *Swett v. Bradbury*, 335 Or 378, 381, 67 P3d 391 (2003). We are not aware of any source of law that authorizes an award of attorney fees to be incurred in the future. *See N. Coast Elec. Co. v. Selig*, 136 Wn App 636, 646, 151 P3d 211 (2007) ("An attorney fee award should generally not include fees to be incurred in the future because the amount is too uncertain and can be easily addressed in a supplemental order."). We therefore reverse the trial court's award of "post-judgment" attorney fees of $5,000 for anticipated future fees.

General judgment affirmed; supplemental judgment reversed and remanded with instructions to delete award of "post-judgment" attorney fees; otherwise affirmed.