No. 365 April 23, 2025 107

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ROXY ANN HEIGHTS HOMEOWNERS ASSOCIATION,
an Oregon nonprofit mutual benefit
with members corporation,
*Plaintiff-Respondent,*

*v.*

Henry Dewey WILSON III,
*Defendant-Appellant.*

Jackson County Circuit Court
21CV46145; A180311

Benjamin M. Bloom, Judge.

Argued and submitted June 14, 2024.

Alexandra P. Hilsher argued the cause for appellant. Also on the briefs was Hershner Hunter, LLP.

Joseph E. Kellerman argued the cause for respondent. On the brief were Melisa A. Button and Hornecker Cowling LLP.

Before Pagán, Presiding Judge, Lagesen, Chief Judge, and O'Connor, Judge.*

PAGÁN, P. J.

Affirmed.

_____
* Lagesen, Chief Judge *vice* Hadlock, Senior Judge; O'Connor, Judge *vice* Mooney, Senior Judge.

**PAGÁN, P. J.**

Plaintiff Roxy Ann Heights Homeowners Association (HOA) brought an action against defendant, who owns property within the geographic boundaries of the HOA, after defendant withdrew permission for the installation of two water tanks on his property which were replacements for an existing water tank maintained by the HOA. The trial court ruled in plaintiff's favor and defendant appeals from general and supplemental judgments that were entered by the court. Defendant raises four assignments of error. First, defendant asserts that the trial court erred in concluding that he breached a contract because, as a matter of law, there was insufficient consideration to support the existence of a contract. Second, defendant asserts that the trial court erred when it concluded that the parties had agreed to change the location of an express easement upon which the water tanks were to sit. Third, defendant argues that plaintiff's partial installation of the tanks was insufficient reliance on defendant's agreement to the project to support relief on the basis of promissory estoppel. Fourth, defendant challenges the award of attorney's fees. As we explain, the trial court did not err and we thus affirm.

## I.   BACKGROUND

Plaintiff HOA consists of the property owners of a small rural subdivision in Medford. The HOA is chartered and governed by a series of Conditions, Covenants, and Restrictions (CC&Rs). Defendant owns an 11-acre parcel of land in Roxy Ann Heights, which has on it a large house and a series of outbuildings. Defendant was previously the president of the HOA. Roxy Ann Heights is served by a private water system, which is maintained by the HOA, and its infrastructure is on private parcels throughout the subdivision. A clause in the CC&Rs provides for the existence of water system easements.[1] An 8,000-gallon underground

---

[1] The CC&R's contained the following clause:

"Every Member of the Association shall have a right and easement of enjoyment in and to the Common Areas and such easement shall be appurtenant to and shall pass with the title to every Lot; subject, however, to the following provisions:

"*****

steel water tank, along with its piping, was situated on an easement on defendant's land. By 2020, the tank had reached the end of its lifespan, and the water system needed upgrades. The HOA began planning for improvements to the system in the summer of 2020.

The replacement plan called for the addition of two 10,000-gallon, 12-feet tall and 12-feet wide, plastic tanks (along with piping), which would be placed aboveground somewhere along the property line of defendant's property and the neighboring parcel. The exact location was left undetermined. The HOA member who coordinated the improvements testified that he spoke to defendant and that defendant agreed to the general idea, but that in exchange, defendant wanted the HOA to "grandfather in" a chain-link fence on his property which violated the CC&Rs.

At a remotely held HOA meeting on October 12, 2020, the HOA approved the water system upgrade. Defendant was present for part of the meeting but encountered technical difficulties part-way through the discussion of the water tank issue and was absent from the rest of the call. The HOA met again on October 20, during which it voted to approve the purchase of the tanks—which defendant voted for—as well as grandfathering in all chain-link fences in the HOA. In December 2020, the coordinating HOA member met with defendant and his neighbor to identify where the tanks would go based on the results of a utility location survey. At that meeting, it became apparent that the tanks would end up entirely on defendant's land. The water tanks were delivered in January 2021. Trenching for waterlines began on January 14, and the tanks were moved into position five days later, where installation work continued. On February 6, defendant left a voicemail with the coordinating HOA member asking him to stop the installation, citing numerous issues, including the size and aesthetics of the

---

"The easement *** shall include *** an easement for the construction, installation, operation, maintenance and repair of a water system to provide water service to some of the Lots. The water system will include underground pipelines, connections and above ground appurtenances such as pumping stations and water meters. Upon installation of the water system, the location thereof shall become fixed, and such location shall not thereafter be changed without the written consent of the Association and the Owner(s) affected by any such change ***."

tanks. The HOA complied, and the tanks then sat partly installed on defendant's property. By that point, the contractor testified that he had spent roughly $51,000 of his $61,000 budget; the tanks themselves cost roughly $14,000.

The HOA then sued defendant for breach of contract (seeking specific performance of the installation of the tanks), promissory estoppel, and declaratory relief. After a bench trial, the court found that defendant had agreed to the installation of the tanks both "expressly and through inaction" and that plaintiff, via its representatives and contractors, had relied on that agreement. The court determined that defendant was liable for breach of contract and promissory estoppel and ordered that the installation of the tanks be finished. The court further declared that the improvements were within the water use easement, as provided under the CC&Rs, and entered a general judgment reflecting its rulings. Based on a provision in the CC&Rs, the court awarded attorney's fees to plaintiff as the prevailing party and entered a supplemental judgment. The trial court issued declaratory relief detailing the new location and nature of the water easement.[2]

The court explained its ruling as follows:

"The Court determines that in reliance upon Defendant's oral agreement with Plaintiff, Plaintiff, through the actions of [its contractors] began and nearly completed installation of two above ground water storage tanks adjacent to pump four on Defendant's property. Defendant specifically approved the work performed by Plaintiff's contractors and never objected to the same until after the storage tanks were installed, fact that Defendant was aware of the work, approved the same, and did not object until two weeks after

---

[2] The trial court's ruling stated:

"[T]he New Water Improvements are both within the geographical location (as expanded and relocated with the agreement of Defendant as adjudicated by the Court) and within the allowable beneficial uses of those certain property rights/easements in favor of Plaintiff and its members as set forth in Article 4, Section 1 of those certain Amended and Restated Declarations of Conditions, Covenants, and Restrictions of Roxy Ann Heights Subdivisions and Roxy Ann Heights Subdivision No. 2, Medford, Oregon, Jackson County, Oregon recorded as Instrument #2014-006043 and such New Water Improvements may hereafter remain in such location as they currently exist (once completed) on Defendant's Exhibit B real property until modified by the HOA."

the work was done obviates any discussion about what procedures the CC&Rs required regarding improvements to the water system, including the location of the same. Plaintiff agreed to the nature of the work and specifically, the installation of the two above ground storage tanks. By his agreement to the work, expressly and through inaction, he has waived any ability to rescind his approval of the water project and prevent the completion of the agreement. The Court specifically enforces Defendant's agreement and approval of the installation of the above ground tanks in the agreed upon location. The remaining claims are dismissed as moot."

Defendant timely appealed.

## II.   ANALYSIS

When reviewing a trial court's legal conclusion based on that court's assessment of evidence presented at trial,

> "we are bound by the court's factual findings as long as the record contains evidence that supports those findings. To the extent that the trial court did not explicitly state its factual findings, we assume that it found facts consistent with its conclusion (assuming, again, that the evidence in the record would support such findings)."

*Troubled Asset Solutions v. Wilcher*, 365 Or 397, 404, 445 P3d 881 (2019) (internal quotation marks omitted). We "view the evidence in the light most favorable to the [trial] court's disposition to determine if it supports the court's legal conclusions." *Id.* (brackets in original; internal quotation marks omitted).

### A.   *Contract: Consideration*

Defendant's first and third assignments of error attack different rulings, but rely on the same arguments, so we address them together. In defendant's first assignment of error, he asserts that the trial court erred in concluding that he breached a contract with the HOA. In defendant's third assignment of error, he asserts that the trial court erred in granting declaratory relief based on the breach of contract claim. We begin with defendant's argument that there

was insufficient consideration to support the formation of a contract.

Defendant's argument rests chiefly on when the contract was formed. The trial court did not state in its ruling when the contract had been entered into. Defendant argues that the contract was formed during the December site visit, when the location of the tanks was finalized, and that a December contract cannot have been based on October consideration. Plaintiff argues that the contract was formed during the October meetings, and that the grandfathering in of defendant's otherwise nonconforming fence was sufficient consideration.

Under Oregon law,

> "The formation of a contract requires a 'bargain in which there is a manifestation of mutual assent to the exchange and a consideration.' Mutual assent, historically referred to as the 'meeting of the minds,' may be expressed in words or inferred from the actions of the parties. Consideration is defined as 'some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.'"

*Homestyle Direct, LLC v. DHS*, 354 Or 253, 262, 311 P3d 487 (2013) (internal citations omitted).

Here, the trial court did not explicitly state when the contract was entered into in its ruling, but it did discuss what it found to have happened at the October and December meetings. Based on the trial court's findings regarding the October meetings, the trial court could have concluded that the parties had a "meeting of the minds" (and part performance) on October 20, when the HOA agreed to grandfather in the chain-link fences, and defendant voted to approve the water improvements. That the scope of the work (*i.e.*, the placement of the tanks) was still uncertain was a risk that defendant took, but the record indicates that at least some work would have been done on defendant's property even if the tanks themselves had ended up on the neighboring property. Consistent with the standard of review, the trial court was provided with sufficient evidence to conclude that the contract was entered into on October 20.

Because the contract was entered into on October 20, and plaintiff's performance (grandfathering in the fences) was performed at the same time, it was not past consideration. Thus, the trial court did not err in concluding that the parties had entered into a valid contract for the water system upgrades.

To the extent that defendant argues that the grandfathering in of the fences was an inducement to come to the negotiating table—and not itself consideration—the trial court did not find facts that would support such an inference, the record does not demand that inference, and we have looked upon that argument unfavorably in other cases. *See Lyons v. Beeman*, 311 Or App 560, 494 P3d 358, *rev den*, 368 Or 513 (2021) (additional monthly payment was not inducement to extend lease, but rather performance of a previously discussed rent increase).

Defendant also argues that the HOA had never before enforced the chain-link fence provision, had indicated it did not intend to start enforcing it, and also grandfathered fences for all residents, so the HOA rendered inadequate consideration. But even if the HOA had not previously enforced the fencing restriction, it had the right to do so. By grandfathering in the fences, it was giving up a right that was enumerated in the CC&Rs. That was legally sufficient consideration. *See McPhail v. Milwaukie Lumber Co.*, 165 Or App 596, 601, 999 P2d 1144 (2000) ("'detriment' means that the promisee has forborne some legal right that the promisee would otherwise have been entitled to exercise"). The HOA's equitable decision to grandfather in the fences of all members at the same time it grandfathered in defendant's fences does not render the consideration inadequate as to defendant. *Market Transport, Ltd. v. Employment Dept.*, 279 Or App 515, 524, 379 P3d 608 (2016) (we do not generally question the adequacy of consideration).

B.   *Contract: Mutual Assent and Relocation of the Easement*

We now turn to defendant's next argument on his first and third assignments of error: that there was a lack of mutual assent to the terms of the contract because the parties could not have agreed to relocate the easement.

Defendant's argument is two-fold: first, he argues that he did not explicitly agree to move the easement, and second, he asserts that plaintiff did not know about the easement.

The trial court determined that the original steel water tank was located on land subject to an express easement by the HOA. An express easement may be relocated by mutual consent between the easement holder and the servient estate. *Ericsson v. Braukman*, 111 Or App 57, 61, 824 P2d 1174, *rev den*, 313 Or 210 (1992) (an express easement was relocated from one road to another, where the easement holder graded and graveled the latter road, and the servient estate knew of the improvements but did not protest). Where a servient estate is aware that certain substantial improvements will be made to an easement, such that the easement may change in character or location, and fails to object to those improvements, the servient estate has implicitly agreed to relocate the easement. *Id.*

Here, the trial court found that defendant knew of the plans to improve the land subject to an easement and did not object until weeks into the installation process. That finding is supported by the record, and—as discussed below—is also legally sufficient to have changed the location of the easement. Defendant (owner of the servient estate) knew that plaintiff (the easement holder) would be removing one tank (on the express easement) and installing two tanks in a slightly different location. The trial court found that defendant's inaction acted as an implicit agreement for the relocation of the express easement.

Defendant additionally argues that plaintiff did not know about the express easement for the underground tanks, and thus could not have agreed to relocate it above ground on defendant's property. To support that assertion, defendant points to evidence in the record that the coordinating HOA member believed that there was not an easement on defendant's property, which had been communicated to the president of the HOA. We reject defendant's argument. First, the record does not necessarily demand that inference; the record was incomplete on the extent to which all officers were or were not actually aware of the water system easements, and the court did not make a relevant finding. But most

importantly, plaintiff had constructive notice of the easement because it was recorded on the deed. ORS 93.643 (providing for constructive notice via properly recorded deeds); *Spady v. Graves*, 307 Or 483, 487 n 2, 770 P2d 53 (1989) ("Constructive notice is notice for which a person is held accountable even though the person did not have actual notice.").

In sum, the trial court did not err by concluding that defendant had entered into a valid contract for the installation of the new water improvements, and that in the course of that contract, defendant had agreed to the relocation of the easement.[3] We reject defendant's first and third assignment of error.

C.   *Reliance and the Character of the Easement*

In his second assignment of error, defendant asserts that the trial court erred when it entered judgment in favor of plaintiff on plaintiff's alternative claim for promissory estoppel.[4] We must address this issue because the determination that the parties had a contract allowing the placement of the tanks on defendant's land does not fully resolve the issue of whether the contract permissibly allowed plaintiff to relocate the easement for the tanks in the way that it did. Defendant's argument here is entangled with an argument about the relocation of the easement, and what reliance is sufficient under *Ericsson*, which we rely on above.

Promissory estoppel requires "(1) a promise (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position." *Neiss v. Ehlers*, 135 Or App 218, 227, 899 P2d 700 (1995). Defendant indirectly challenges the third element by arguing that plaintiff's reliance on defendant's promise to allow the tank project on his land—in the form of partial installation of the tanks—was legally insufficient to relocate the easement,

_____

[3] The trial court concluded that defendant had waived the requirement for any amendment to be in writing, and defendant does not challenge that conclusion on appeal.

[4] Plaintiff's pleadings included a separate claim for promissory estoppel, and the parties and the court treated it as an independent claim. However, promissory estoppel is not a cause of action, but rather a theory of recovery. *Neiss v. Ehlers*, 135 Or App 218, 227, 899 P2d 700 (1995).

or in the alternative, create an irrevocable license. But because we concluded that the trial court did not err by concluding that defendant had consented to the relocation of the easement, we need not address whether the improvements were of a nature that would create an irrevocable license. *See Brown v. Eoff*, 271 Or 7, 11, 530 P2d 49 (1975) (discussing Oregon's minority rule that promissory estoppel, combined with significant expenditures on permanent improvements, creates an irrevocable license). We thus focus on whether the nature of the work performed was sufficient "actual reliance" on defendant's promise to relocate the easement.

In *Ericson*, we reasoned there had been an "investment of considerable time and money," which included the grading and gravelling of a new road (and the abandonment of the old road), which was sufficient to relocate the easement. *Ericsson*, 111 Or App at 61.[5]

Here, the trial court's findings, supported by the record, were sufficient to support a conclusion that by the time defendant called off the installation of the new tanks, plaintiff (via its contractors) had invested considerable time and money. The trial court found that defendant waited until several weeks into the installation process to object. By that point, the contractor had dug trenches, prepared a base for the tanks to sit on, moved the tanks into position, and laid and joined pipes and fittings, at a cost of roughly $51,000. The trial court did not err by entering judgement in plaintiff's favor on the promissory estoppel claim, or in concluding that the express easement no longer included the location of the old tank, but now included the new tanks and piping, as laid out in its statement of declaratory relief.

D.   *Attorney's Fees*

Lastly, defendant challenges the award of attorney's fees. He argues that the trial court failed to apportion

---

[5] By comparison, we found a very similar improvement to be insufficient to create an irrevocable license in *Brown*, indicating that there is a lower standard in the relocation of easement cases (which merely relocate an extant easement) as compared to irrevocable license cases (which create a new right, even if that right is effectively an easement). *Brown*, 271 Or at 12 ("grading, graveling and oiling, none of which are essentially permanent or particularly expensive"); *Heisley v. Eastman*, 102 Or 137, 201 P 872 (1921) (an irrevocable license amounts substantially to an easement).

fees between claims which had arisen from the CC&Rs (which provided for attorney's fees) and those which did not. Defendant argues that the contract and promissory estoppel claims are *not* subject to attorney's fees, implicitly conceding that the declaratory judgement claims are subject to fees.

We review fee apportionment for abuse of discretion. *Coast 2 Coast Logistics, LLC v. Badger Auctioneers, Inc*., 323 Or App 374, 387, 524 P3d 555 (2022). In a case where some claims are subject to attorney's fees, but others are not, the court must apportion fees between claims. *Id.* However, factually similar claims with common legal issues are not subject to fee apportionment, so long as "the party entitled to fees would have incurred roughly the same amount of fees, irrespective of the additional claim or claims." *Id.* The trial court has "wide discretion in making the factual determinations necessary to segregate claims * * *." *Id.*

Here, the CC&Rs state:

> "In the event legal proceedings shall be required to enforce or prevent breach of any of the [CC&Rs] or agreements contained herein, the prevailing party in such legal proceedings shall be entitled to recover reasonable attorneys' fees from the losing party, in addition to costs and disbursements, at trial or on appeal."

The provision is broadly worded ("enforce or *prevent* breach of *any* of the [CC&Rs]"). The dispute arose from the relocation of the water tanks which were situated on an express easement provided in the CC&Rs. The court's ruling indicates that both the contract and promissory estoppel claims were inextricably bound in determining whether and to what extent the express easement, as provided for in the CC&Rs, applied.

Defendant repeats his earlier argument that plaintiff did not have actual knowledge of the water system easements, which are provided for in the CC&Rs. Defendant reasons that if plaintiff did not know about the easements clause, then the dispute could not have arisen from the CC&Rs. But we dispense with that argument for the same reasons as above: the easement was recorded on the deed. Given the wide deference afforded by the standard of review,

the trial court did not err by failing to apportion attorney's fees by claim.

### III.   CONCLUSION

The trial court did not err by concluding that a contract existed between the parties, and that specific performance was warranted. It also did not err in concluding that, to the extent the contract may not have bound defendant completely, defendant's subsequent acquiescence to the installation of the tanks was a basis to support recovery under a theory of promissory estoppel. The trial court did not err by concluding that the location of the easement had changed by nature of defendant's acquiescence. In turn, the trial court did not err in issuing declaratory relief which recognized the easement as encompassing the new tanks and their appurtenances. Lastly, the trial court did not err in failing to apportion attorney's fees by claim.

Affirmed.